Ava W. Farwell, Appellant, v. Illinois Merchants Trust Company (Now Known as Continental Illinois Bank & Trust Company) as Trustee Under the Trust Agreement from Ava W. Farwell, Appellant. Loretta E. Farwell, Appellee.

Gen. No. 35,491.

O'CONNOR, P. J., dissenting.

50

Opinion filed December 28, 1931.   Rehearing denied January 11, 1932.

McCulloch & McCulloch, for appellant Continental Illinois Bank & Trust Co.

Kirkland, Fleming, Green & Martin, for appellant Ava W. Farwell.

Hopkins, Starr & Godman, for appellee; O. John Rogge, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

This is an appeal by the Illinois Merchants Trust Company, trustee, from an order that it pay to Loretta E. Farwell out of a trust estate held by it, $5,000, for the use of Hopkins, Starr & Hopkins for their services as solicitors of Loretta E. Farwell in this case. The propriety of this order is the only question for this court to decide.

The circumstances giving rise to this litigation are unusual. On May 28, 1918, Ava W. Farwell, hereafter called complainant, then 67 years of age, made a trust agreement conveying property valued at about $750,000 to The Northern Trust Company as trustee, the net income to be paid to complainant during her life. The complainant had one son, John Arthur Farwell; he was married to Loretta E. Farwell, from whom he had been estranged for some time before this. There were a number of circumstances, unnecessary to narrate, which caused complainant to be critical towards her daughter-in-law. John Arthur Farwell was insisting that his mother give him approximately $275,000 to enable him to effect a settlement with and secure a divorce from Loretta, and to effect some sort of settlement with a Mr. Scharff and thereafter to marry Mrs. Scharff. Complainant was opposed to

having her son marry Mrs. Scharff and had withstood his demands. Mr. Ashcraft, who had been complainant's attorney and the attorney of her husband then deceased, was consulted as to how she might escape the importunities of her son. Mr. Ashcraft advised her in substance that if she wished to place her property entirely beyond her control she could do so by conveying her estate to a trustee, and that such conveyance would be irrevocable. Pursuant to this advice the trust agreement of May 28, 1918, was executed. This agreement provides that if John Arthur Farwell should die leaving a widow other than Edith S. Scharff, the trustee shall after the death of said son select and set aside a sufficient amount of securities for the benefit of such widow to realize a net income of $5,000 per annum, such income to be paid to the widow during her widowhood. By this provision Loretta E. Farwell has an interest in the trust to the amount of $5,000 a year, provided she continues to be the wife of John Arthur Farwell until his death, and dependent upon her surviving both him and his mother. In 1925, Loretta was about 50 years of age, she had no child and did not live with her husband, although they were not divorced.

In 1916, Loretta brought suit against her mother-in-law seeking damages for the alleged alienation of the affections of her husband. The judgment was against Loretta in the trial and this was affirmed in the Appellate Court—234 Ill. App. 638. It is quite apparent that the hostility of complainant to her daughter-in-law was increased by circumstances attending the trial of this alienation suit. Complainant testified in the present case that "there was humiliating and dreadful publicity," and evidently she was of a mind to cut off Loretta from her beneficial interest in the trust if possible. To this end she first advised with former Judge Charles S. Cutting, who drew up a proposed modification and August 7, 1922, filed the original bill in this case, asking that the modification be allowed.

In this proposed modification it was provided that Loretta E. Farwell should be excluded from the benefit of the trust because of the vexatious and annoying alienation suit brought by her against the complainant. Nothing was done with this bill for some time; later, the Northern Trust Company asked that it be permitted to resign as trustee and that the Illinois Merchants Trust Company be substituted as successor in trust, which was done.

December 8, 1924, complainant filed an amended and supplemental bill by counsel other than Judge Cutting, seeking to modify the trust of May 28, 1918. This amended bill alleges that complainant did not fully understand and appreciate the terms and provisions of the original trust; that it was executed under a mistake of fact and of law and was therefore voidable; that she desired to set aside the trust agreement and would bring proceedings to this end unless she was permitted to modify it as proposed; that the value of the estate was approximately $750,000. The original trust agreement provided that after the payment of $5,000 a year to the widow of John Arthur Farwell as above described, certain amounts should be paid to certain named beneficiaries, and the amended bill alleged that all of the beneficiaries except Loretta E. Farwell, the unborn children of John Arthur Farwell, two unorganized charities and the minor children and unborn children of Mabel Wallace, a beneficiary, and the unborn descendants of Thyrza, Geta and Alice Godwin, beneficiaries, who are unmarried, had consented in writing to the proposed modification of the trust.

This proposed modification authorized complainant during her lifetime to withdraw from the principal an amount not exceeding in the aggregate $150,000, and to dispose of by will $100,000; that by reason of the vexatious proceedings referred to, the complainant wished to revoke, in so far as she had the power, the provisions for Loretta contained in the trust agree-

ment of May 28, 1918, but in order to protect the trustee and the other beneficiaries of the trust the trustee was directed to immediately set aside and maintain a trust fund of securities sufficient to pay Loretta $5,000 per annum—but the trustee was directed not to pay said sum to Loretta until or unless her right thereto had been determined by the courts. There was also a provision that if Loretta's rights should not be determined within 21 years after the death of the last survivor of the grantor and of John Arthur Farwell, Florence Ashcraft and Charleta Ashcraft, the trustee should pay said sum to Loretta in accordance with the provisions of the trust unless Loretta's right to take should be determined adversely to her within the 21 years. It is pointed out in argument that by the trust agreement of May, 1918, Loretta takes precedence over the other contingent trusts, so that even if it should be modified so as to allow complainant to withdraw $250,000 there would be ample property left to produce a net income of $5,000 a year for her. Two of the defendants were defaulted; formal answers were filed for the minor defendants by a guardian *ad litem;* the attorney general, acting for the unorganized charities, filed a general denial and all the other defendants filed consents to the proposed modifications except Loretta E. Farwell and the Illinois Merchants Trust Company, trustee. The trustee in its answer asked the court "to protect adequately and properly all the rights and interests of Loretta Elizabeth Farwell, as beneficiary under said indenture of trust of May 28, 1918." It also asked the court to protect the rights of the unorganized charities and the minors and unborn children. Also that it could not determine "whether or not it is to the best interests of all persons *in esse* and all persons not *in esse* who are or may be interested in said trust as created in said indenture of trust of May, 1918, to compromise and settle the claims of the complainant upon the terms

offered by her; that this court should determine whether or not such compromise and settlement be made; that this court protect adequately and properly all the rights of all the beneficiaries of said trust now in being or hereafter born.'' Loretta answered, refusing to consent to the proposed modification and averring that it would impair her interest and injuriously affect the interests of others.

It is the position of Loretta E. Farwell and her solicitors that the trustee refused to perform its duties imposed upon it by the trust agreement and that it therefore became necessary for her solicitors to step into the breach and perform the services which the trustee should have performed in resisting the proposed modification of the trust. On the other hand, the trustee denied that it failed in any of its duties in this respect and says that the proposed new trust gives Loretta substantially the same contingent rights she had under the original trust, and that Loretta's solicitors had no right to act for the other beneficiaries who were represented by their own solicitors and consented to the proposed modification, or to speak for the beneficiaries represented by the attorney general or by the guardian *ad litem* or for the defaulted beneficiaries; that Loretta was serving no interests but her own and that her solicitors had no right to have their fees paid out of the trust estate.

It may be conceded at the outset that complainant's purpose in proposing the modification was, if possible, to cut off Loretta from any beneficial interest in the trust. There were circumstances, unnecessary to relate, which might be considered to have justified complainant's attitude in this respect. Loretta was also warranted in withholding her consent and in resisting the proposed modification. While the balance left in the estate after taking from it $250,000 as proposed, would apparently leave ample to take care of her contingent interest, yet the modification also imposed upon

her the burden of establishing her rights in the courts.

We are not disposed to agree with the criticism made by Loretta's solicitors on the conduct of the trustee. Complainant, an elderly lady, asserted that she did not understand that she had lost entire control of her property when she executed the trust agreement, but it was quite apparent before the hearing that she could not successfully sustain this claim. Mr. Ashcraft, by deposition taken some time before the hearing, gave convincing testimony that the irrevocable character of the instrument was fully explained to the complainant and that she so understood it. Upon the hearing this was amply confirmed by the uncontradicted testimony of the attorney for the Northern Trust Company and by its secretary. There was no real conflict upon the issue presented. The trustee in its brief in this court concedes this, saying: "It is obvious to everyone that the trust agreement executed in May, 1918, could not have been modified to the prejudice of anyone without his consent." That this was true seems to have been a foregone conclusion calling for the expenditure of no special legal efforts in contest by any counsel in the case.

Should the chancery court allow solicitors' fees in this case to Loretta's attorneys? The general rule in this State is opposed to such an allowance, the principle being that such allowances are deemed as creating liabilities which did not exist at common law. *Gehrke v. Gehrke,* 190 Ill. 166; *Northern Trust Co. v. Sanford,* 308 Ill. 381. In both of these cases it was held that statutes allowing solicitors' fees are to be construed strictly as they are penal in their character. In *Wilson v. Clayburgh,* 215 Ill. 506, was involved a question of whether a court of chancery in the exercise of its equitable powers should allow solicitors' fees for a beneficiary under a trust who brought a suit to have the resignation of the trustee accepted and a new trustee appointed. It was held the chancellor had no

such power; that the only exception to this rule in this State is in cases brought by trustees for the construction of wills, in which class of cases the cost of litigation must be borne by the estate. *Woman's Union Missionary Society of America v. Mead,* 131 Ill. 338; *Ingraham v. Ingraham,* 169 Ill. 432. This decision was followed in *Aloe v. Lowe,* 230 Ill. App. 538, which was a proceeding for the assignment of a widow's dower. It was held that inasmuch as complainant did not pray for further construction of the will than that already given in a decided case and in view of the fact that the bill was filed solely in her own interest, the order allowing solicitor's fees was erroneous. Certiorari was denied in this case. In *Jennings v. Hills,* 247 Ill. App. 98, it was held that the allowance for complainant's solicitor's fees was improper as the bill did not involve the construction of an ambiguous will. To the same effect is *Bevier v. Hay,* 221 Ill. App. 1; *Converse v. Hindes,* 139 Ill. App. 370. In *Rasch v. Rasch,* 278 Ill. 261, Christian Rasch individually and as trustee appealed from an adverse decree in the circuit court in favor of Christopher Rasch, who was allowed solicitor's fees. The Supreme Court reversed this, saying that it has been repeatedly held that solicitor's fees cannot be taxed as costs against the unsuccessful party in a chancery suit in the absence of a statute. *Kendall v. Taylor,* 245 Ill. 617, was a suit for partition, but it was necessary to construe a will in order to determine who owned the property. The Supreme Court held against the allowance of solicitor's fees on the ground that this was not a proceeding for the construction of a will but for partitioning of real estate. In *Tincher v. Arnold,* 147 Fed. 665, the allowance of solicitor's fees was disallowed to a complainant seeking to have made void the testator's bequest to charity, in which event she would take the property as heir. It was said that the suit was plainly for her own interests alone

and not for the interests of the defendant trustees. Other cases holding that solicitor's fees should not be allowed except where the construction of a will was involved are *Board of Administration v. Stead*, 259 Ill. 194; *Stevenson v. Stevenson*, 285 Ill. 486; *Jansen v. Godair*, 292 Ill. 364; *Billings v. Warren*, 216 Ill. 281; *Meily v. Knox*, 191 Ill. App. 126.

In the instant case the bill seeks no interpretation or construction of the trust agreement, but proposes a modification only. Proceedings to construe a will are predicated upon ambiguities in the instrument. There is nothing of this kind either claimed or apparent in the instrument. Obviously, the solicitors for Loretta are not entitled to an allowance for fees upon the assumption that this is a proceeding involving a construction of the trust agreement.

Attorneys for Loretta cite a large number of cases in support of the proposition that where a trust agreement contains a clause making it absolutely irrevocable, the creator is subsequently without power to substantially change or modify it. As we have said, there seems to be no contest over this proposition.

It is urged that the trustee failed in its duty to defend the trust and to protect the rights of all the beneficiaries therein. As we have heretofore indicated, the circumstances do not indicate any failure of the trustee in this respect. Undoubtedly, being advised of the facts as to the execution of the instrument, the trustee was content to allow the proceedings to continue to their inevitable result.

Cases where there is an attempt to terminate or revoke a trust are not in point as to the beneficiaries other than Loretta. The bill prayed for a modification as to these other beneficiaries, and, while it is evident that as to Loretta's interests, the complainant desired to make it as difficult as possible for her to obtain the benefits of the provision touching her interests, yet it

does not amount to a termination or revocation; but even if it did seek to revoke as to Loretta's interests, her contest would be for her own benefit alone and not for the benefit of anyone else.

We find no cases cited in the brief of the solicitors for Loretta E. Farwell which are precisely in point. Most of them have to do with fees of trustees. A typical case is *Patterson v. Northern Trust Co.,* 286 Ill. 564, in which solicitor's fees were allowed only to the trustee. *Abend v. Endowment Fund Com'rs of McKendree College,* 174 Ill. 96, is a trustee case in which two sets of trustees were involved and allowances for fees were made only to the trustees. In *Stahl v. Stahl,* 166 Ill. App. 236, was involved a bill to set aside a conveyance as fraudulent, to establish a trust, and for a partition of the real estate. A partition was allowed and an allowance was made to complainant for his solicitor's fees. Cases cited in other jurisdictions are not in conflict with the rule established in this State. In *Trustees of Internal Improvement Fund v. Greenough,* 105 U. S. 527, the complainant, not a trustee, filed a bill alleging that the trustees were wasting and destroying the estate: It was there held that although complainant was not a trustee he may be said to have saved the fund for the beneficiaries and to have secured its proper application, and solicitor's fees were allowed on the ground that, where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction, he is entitled to reimbursement, either out of the fund itself or by contribution from those who accepted benefits from his efforts. A similar case is that of *Harrison v. Perea,* 168 U. S. 311.

The instant case presents a different situation. All of the defendants except the two who were defaulted had their own solicitors and counsel, and were acting in the way which best served their purpose. They had

asked no assistance from Loretta or her counsel. The claim for solicitors' fees cannot be predicated upon the assumption that she was working with the others in a common purpose. The several parties who were beneficiaries had attorneys of their own. They did not work in harmony with Loretta or in any common aim or purpose. For various reasons satisfactory to them they were willing to accede to complainant's wishes.

Loretta's solicitors are not entitled to fees because (as they argue) the interests in the trust estate of the other beneficiaries are increased through their efforts in defeating the proposed modification. The other beneficiaries were competent to have their own opinion as to this, and if, because of their friendship for the complainant or for any other reason, they desired to accede to her wishes, they had the right to do so without the interference of anyone. Even if the result of the efforts of Loretta's solicitors in addition to benefiting her also resulted in benefit to the other beneficiaries, their services as to these latter were those of a volunteer and equity does not favor a volunteer. *Engelthaler v. Engelthaler,* 196 Ill. 230.

The efforts of Loretta's solicitors were directed towards a result directly contrary to the expressed wishes of the other beneficiaries. The effect of the decree is to require the payment of Loretta's solicitors out of the principal of the trust estate, in which case she would contribute nothing for her solicitors' fees but these would come out of the bequests to the charitable institutions and the Godwins, who were not contesting complainant's desire to modify the trust agreement. We are inclined to agree with the suggestion that this decree requires the unwilling beneficiaries to pay $5,000 for something they never asked for and did not want, while Loretta, because of her contingent interest in the income and having priority over the interests of the others, "goes scot free."

In view of the rule established in this State that solicitor's fees shall not be allowed in chancery proceedings except in such cases as we have indicated, we are not prepared to enlarge the rule so as to permit them in the present case.

Other points are suggested upon which we do not deem it necessary to comment. We might remark, however, that it is doubtful whether the order allowing solicitors' fees is a final decree disposing of all the issues in the case, but however this may be, we have treated it on the instant appeal as a final decree.

For the reasons above indicated, the order allowing fees to the solicitors of Loretta E. Farwell is reversed, and as we hold that such fees cannot be allowed in any event, it is unnecessary to remand the cause.

*Reversed.*

O'CONNOR, P. J., dissents.

MATCHETT, J., concurs.