## John J. McLean *et al.* Exrs.

### *v.*

### Elizabeth Thomas.

#### *Filed at Springfield January 17, 1896.*

1. Equity—*relief in, is limited by the pleadings.*   A bill in equity by the widow of a testator, praying to have fixed by the court her reasonable annual allowance for support, as provided in the will should be done if the widow and trustees could not agree, does not raise for decision the question of such widow's right to homestead and dower in the estate, though her supposed rights in that regard are incidentally stated in the bill and denied in the answer.

2. Trusts—*reasonableness of widow's allowance for support under terms of will.*   Under a provision in a will that the trustees should pay the testator's widow "a generous and suitable maintenance and support, * * * taking into consideration the value of my estate and the fact that she has greatly contributed in accumulating said estate," an allowance, by decree, of $1700 per year, in addition to the occupation by her of the homestead and forty-five acres of ground, is reasonable, where the estate amounted to $150,000.

3. Attorney's fees—*of widow, under bill to fix allowance, may be charged to the estate.*   Under a bill filed to fix a widow's allowance for support, in accordance with a provision of the will that the court should fix such allowance if the parties could not agree, it is proper to order payment of the widow's solicitor's fees out of the estate.

*McLean* v. *Thomas,* 52 Ill. App. 161, affirmed.

Writ of Error to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Montgomery county; the Hon. Jacob Fouke, Judge, presiding.

This is a bill filed by defendant in error, the widow of Samuel R. Thomas, deceased, who died testate, against the executors of the will of said testator, with the object and for the purpose hereinafter mentioned.   The hearing of the cause by the trial court resulted in a decree in favor of the complainant below, from which the defendants, executors of the will, took an appeal to the Appellate Court. The Appellate Court affirmed the decree of the circuit court; and the case is brought here by writ of error for

the purpose of reviewing the judgment of affirmance, so entered by the Appellate Court.

Samuel R. Thomas died October 3, 1890, seized and possessed of an estate estimated at about $150,000, consisting of 2320 acres of land and $45,000 in personal property, including $19,500 in bank stock. His will was admitted to probate on the 8th, and letters testamentary were issued to plaintiffs in error on the 23d of the same month. Besides his widow, the defendant in error, he left surviving him several sons and daughters, and a grandson, the child of a deceased daughter. The dwelling house he occupied as a homestead is worth $4000 or $5000. Defendant in error has continued to occupy it since his death, and about forty-five acres of pasture land in connection with it. By his will he devised all his land in parcels to his several heirs, respectively, for their natural lives, with remainder to their children, and also disposed of his personal property. The provision thereby made for his wife is as follows:

"The residue and remainder of my said residuary estate, consisting, as above stated, of capital stock in the Hillsboro National Bank and the First National Bank of Litchfield, Illinois, my said trustees shall continue to hold in trust, and out of the proceeds of said trust fund (using for that purpose the interest or dividends derived therefrom) pay to my beloved wife, Elizabeth M. Thomas, in at least quarterly payments, and oftener if necessary, (the first payment to be made not longer than ninety days after my death,) a generous and suitable maintenance and support, such as may be mutually agreed upon by my said wife and trustees, taking into consideration the value of my estate and the fact that she has greatly contributed in accumulating said estate. And in case my wife and trustees· are unable to mutually agree upon the amount which they shall pay her for her maintenance and support, then they shall pay her such amount as may be ordered to be paid to her by the circuit court of said

county, as hereinafter provided, it being my will and intention that my said wife shall receive a generous and suitable maintenance and support out of my estate for and during the term of her natural life. The remainder, if any there be, of said interest or dividends derived from said bank stock after payments to my beloved wife, as aforesaid, shall be held in trust by said trustees during the life of my said wife, and be invested and re-invested, in this State or elsewhere, in real estate, stocks, bonds, notes, mortgages or otherwise, and at the best rate of interest, or so as to secure the largest and safest income, as in their interest (opinion) may best promote my estate and increase the value of said trust. * * * It is my will that my dear wife shall not be required or compelled to accept the provisions of this will in lieu of any interest which the law casts or confers upon her in any of my real estate which I have set off to my said sons and daughters, respectively, and have conveyed to my said trustees for the use and benefit of my said grandson, as I intend and so will that her rights and interests in all of the real estate aforesaid shall remain wholly undisturbed and unquestioned during the term of her natural life; but I trust that there will never be any occasion for her to assert her rights in regard to said lands, and hope that she will be liberally supported and maintained without recourse on said lands. And in case said trust fund shall, from any cause and at any time, prove inadequate and insufficient to provide her with such generous, ample and liberal maintenance and support as is intended by me, then it is my will, and I so direct, that she shall have a first, paramount and subsisting lien on all of said real estate, and the rents, issues and profits thereof, which I have set off to my said sons and daughters, respectively, for the terms of their natural lives, respectively, as aforesaid, and which I have conveyed to my said trustees for the use of my grandson, as aforesaid, to secure to her such maintenance and support during the term of her

natural life, which lien may, whenever the circumstances demand it, be duly enforced by my dear wife, taking and receiving so much of the rents, issues and profits of said lands as may be necessary to provide her with such maintenance and support. By accepting the provisions of this will my dear wife shall release her dower in any other lands than those above described and mentioned which I may own at the time of my death."

To this he added the following direction: "And for the better protection of my dear wife I do hereby further order and direct, that if any difference should arise between my dear wife and my said trustees, or their successors in trust, as to the amount which shall be paid to her for her maintenance and support and the times of payment, that it shall be the privilege of my said wife and the duty of my said trustees to make application to the circuit court of said county (the opposite party being duly notified of such application being made) to adjust such differences and determine the amount which she shall receive out of my estate for her maintenance and support, and when the same shall be made. And it is my will that any such order may, on like application by either party, from time to time, as the changing circumstances may require, be modified, altered or set aside, and the amount ordered to be paid increased or diminished, as to the court may appear just and right."

The bill herein sets forth the death of the testator, complainant's relation to him, the character and value of his estate, the provisions of his will, its admission to probate, and the acceptance by defendants of the trust it imposed, and alleges that the differences contemplated by this direction had arisen; that the defendants had made but one payment to her, of about $900, and upon various pretexts, of which the only one stated is that they could not agree with her upon the amount to be paid, had refused to pay any further sums. It also states that she had an estate of homestead and dower interest in the

lands disposed of by the will, the rental value of which is four dollars per acre, and that it is therein provided that the interest or dividends derived from the bank stock mentioned should be paid to her, but all the relief prayed is, "that defendants may be required by the order of the court to pay to her the income or dividends upon the bank stock immediately after the same shall be declared and is payable by the banks, and also one-third of the rental value of said lands in quarterly installments."

The answer denies that complainant has an absolute and unqualified estate of homestead and dower interest in said lands or the right to receive all the dividends upon said bank stock, and some other averments of the bill thought to be immaterial, but admits the will as alleged, and avers that defendants have been at all times, and are now, ready and willing to carry out all its provisions relating to complainant, but have been unable to do so because of the difference of opinion between her and them as to her rights under said will. It admits that they have paid her only about $900, but avers that they would pay her more if it were necesssary for her maintenance and support and she would receive it, and that at one time they offered to pay her the further sum of $300, which she refused to accept unless all the dividends then collected on the bank stock were paid her. It charges that she has received and appropriated to her own use a considerable amount of money and personal property of the estate specified, for which she ought to account before claiming further payments.

A replication was filed, a reference to the master ordered, proofs taken and reported, and a decree entered, which finds that the testator died October 3, 1890; that his will was probated; that defendant in error is his widow and that plaintiffs in error are executors of said will; that she was to be paid a generous and liberal maintenance and support; that in case she and they could not mutually agree upon the amounts to be paid, then it was

her privilege and their duty to make application to the circuit court to adjust the amount, and that there is a difference between them as to such amount; that the value of the testator's estate is about $150,000; that defendant in error is now, and has been since the testator's death, in possession of the testator's late homestead, together with the buildings and about forty-five acres of land, and has received the rents, issues and profits thereof, and that the annual rental value of said homestead is $300.

The circuit court ordered that plaintiffs in error, as such executors, shall pay to defendant in error, during the time she has occupied and shall continue to occupy the dwelling house, buildings and forty-five acres of land, the sum of $1700 per annum for her maintenance and support, and that plaintiffs in error shall be credited with any payment or payments which they may have heretofore made to her for her maintenance and support under said will, said allowance to commence October 3, 1890. For the year 1893, and thereafterwards, said sum of $1700 shall be paid in semi-annual payments of $850, on the third days of January and July in each year. If the defendant in error shall abandon or surrender up the possession of said dwelling house, buildings and forty-five acres of land, and cease to occupy the same, plaintiffs in error shall, from the time such possession shall be delivered up, pay to her $2000, in semi-annual installments of $1000, at the dates aforesaid. The court further orders that a solicitor's fee of $250 be paid by plaintiffs in error out of said estate to Amos Miller, the solicitor of defendant in error. The court holds that it has no jurisdiction to determine whether or not defendant in error has homestead or dower in the testator's estate, or whether or not she has taken and converted to her own use moneys and property belonging to said estate, or to determine the amount of money, if any, which plaintiffs in error have paid her for her maintenance and support, and therefore declines to hear and determine said matters.

GEORGE L. ZINK, and JAMES M. TRUITT, for plaintiffs in error.

AMOS MILLER, for defendant in error.

Per CURIAM: In their opinion deciding this case the Appellate Court say:

"We think the assignment for error that the court below refused to decree that appellee did not have a homestead and dower interest in the lands, and to settle the account charged in the answer for money and personal property of the estate received and appropriated by her, involves the controlling question in the case, namely, the extent to which it could properly inquire and act under the pleadings. There is no claim that it could have set off a homestead or assigned dower, even if her claim of right thereto had been admitted by the answer. The bill did not seek it. The proper parties were not before the court. It certainly was not a bill for an accounting, and there was no cross-bill. Counsel for appellants also concede that it did not ask for any construction of the will, and say that none was necessary. That proposition has our full concurrence. As we understand it, the object was simply and solely to get an impediment to the execution of a direct and express trust removed, and a decree thereupon for its execution. Complainant was the *cestui que trust* and defendants were the trustees. The trust is stated in the bill, and created by the will of her deceased husband therein set forth. As thus shown, it is simply to pay to her out of a certain fund, for her support and maintenance, certain sums and at certain times, to be determined by their mutual agreement, or, in case of their inability to agree, by the circuit court of Montgomery county. It is thus further shown that the amount to be so paid was to be sufficient for her liberal and generous support, considering the value of his estate and the fact that she had greatly contributed towards its accumula-

tion, and that the questions of amount and times of pay-
ment were to be determined, and the first payment made
not longer than ninety days after his death.   The bill is
filed against them, not in their general character or with
reference to their other powers as executors of said will,
but only as trustees of the particular fund and for the
particular purpose in that behalf therein stated.   That
fund consisted of $19,500, invested in the stock of two
certain banks.   The amount of dividends thereon is not
stated.   It is averred that the parties have been and are
unable to agree upon the amount to be paid to her and
the times of payment, by reason whereof the trust is not
executed, and cannot be until that impediment is removed
by the adjustment by the court of the differences between
them, and its determination of those questions according
to the will creating the trust in such case made and pro-
vided.   It is not charged, nor was it necessary to charge,
that in differing from her upon the questions stated, the
defendants acted fraudulently, dishonestly or without
right on their part so to do, but only that they have in
fact differed, and that by reason thereof complainant,
except to the extent of $900, has failed, and is failing, to
receive the benefit of the trust so created in her favor and
to which she is in equity entitled.   The emergency and
condition upon which, according to the terms of the in-
strument creating the trust, the court was to intervene
and determine those questions, are thus alleged to have
happened, and the prayer, in substance, is that the court
do intervene and determine them, and thereupon order
that the defendants pay her accordingly.

"This, in our opinion, is all that is essential or material
in the bill.   The statement of her interest in the land, as
well as in the trust fund, as complainant understands it,
and the prayer that upon that basis her allowance may
be fixed, do not change the questions or the case for the
consideration of the court.   She did not ask for a home-
stead or dower, or for rent, as rent, but for money for her

maintenance and support, to be paid in amounts and at times to be determined by the court,—and that was to be the extent and limit of the court's determination, as fixed by the trust.

"The answer admits all the material averments of the bill, the character and capacity of defendants as trustees, the terms of the trust, the failure of its execution and the reason thereof, and the right of complainant, as *cestui que trust*, to an allowance, out of the trust fund, of money for her maintenance and support in the style indicated, to be paid to her by them in amounts and at times to be determined as alleged in the bill. Their denial of her claim of homestead and dower in the lands, and of right to all the dividends on the bank stock which constitutes the trust fund, forms no issue in the case made by the bill. Their consideration is unnecessary for any purpose contemplated by it. That purpose was simply to ascertain and fix the amount of money to be allowed for her support and the times of payment. In so doing the court was expressly directed, by the terms of the trust, to take into consideration the value of the testator's estate and her meritorious agency in its acquisition, and his declared intention that the allowance should be amply generous and liberal for the purpose indicated. It was also necessary to consider her age, health, social position, habits and tastes, and the probable effect of the change in her mode of living in consequence of her being then a widow and living alone. The court had all the information on these points that the parties saw fit to furnish. It was also proper to consider the fact that ever since the death of her husband she had been, and then was, occupying their homestead without charge for rent, because from such occupancy she had been and then was deriving some means of support, and would, of course, require so much less for her allowance out of the trust fund for that purpose while she so occupied it. But we fail to perceive how its determination could be affected by the question

of her claim of right to homestead and dower and all the dividends upon the bank stock, unless she was actually receiving, under such claim, some such means. Under the circumstances, and since she was not receiving any thereunder, we think the court rightly refused to consider questions that may or may not hereafter arise between her and the devisees upon such claim. Should she succeed in any attempt to enforce it, and so acquire additional means of support, the changed conditions can be fully met by an application for a change in the order of allowance out of the trust fund.

"We are of opinion that the amount allowed was fully warranted by the evidence, and that the solicitor's fee might well be regarded as a part of such allowance and made under the will, rather than in the light of any technical rule of law. The court intended that the amount to be paid to her was not to be diminished by expenses already incurred to procure its determination. But appellants were alike interested in procuring it. All the parties were seeking it, and it was for the benefit of all alike. The necessity for it arose under the provisions of the will, without any wrong on either side. The testator might have prevented it, and the case bears some analogy to one brought for construction of a will. In such case the expenses, including solicitors' fees, are generally borne by the estate. (*Missionary Society* v. *Mead*, 131 Ill. 338.) Perceiving no substantial error in the record, the decree will be affirmed."

We endorse the foregoing views, and think that they correctly dispose of the material questions involved in the case.

The judgment of the Appellate Court is accordingly affirmed.                        *Judgment affirmed.*