Delta & Pine Land Co. v. Sherwood et al., 187 Ill. App. 167.

---

## Delta & Pine Land Company, Appellee, v. Silas W. Sherwood and Arthur F. Stillson, Administrators, Appellants.

### Gen. No. 19,301.

1. INTERPLEADER, § 18*—*when interpleader not required to pay interest during litigation.* On bill of interpleader, *held* that the court properly refused to compel complainant to pay interest on the fund during the litigation, where the fund had been deposited in a bank under an order of the court and the bank allowed and the parties in interest received interest at the rate of three per cent.

2. INTERPLEADER, § 19*—*when order as to costs of accounting before master proper.* On bill of interpleader, *held* that the order as to the costs of accounting before the master was proper.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

3. INTERPLEADER, § 19*—*solicitor's fees*. On bill of interpleader, the interpleader cannot be allowed solicitor's fees.

4. COSTS, § 52*—*right to allowance of attorney's fees*. A court cannot allow solicitor's fees in the absence of a statute authorizing it.

5. APPEAL AND ERROR, § 1197*—*when allowance of solicitor's fees in a former decree cannot be questioned*. On appeal from a decree entered on a bill of interpleader, *held* that appellants could not question the allowance of solicitor's fees to the interpleader in a former decree, where such decree was final and had been appealed from, but the appeal was dismissed for failure to file a transcript of the record.

6. EQUITY, § 453*—*conclusiveness of consent decree*. Parties consenting to a decree on a bill of interpleader allowing the interpleader solicitor's fees cannot be heard to question its propriety.

Appeal from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding. Heard in this court at the March term, 1913. Modified and affirmed. Opinion filed May 25, 1914. *Certiorari* denied by Supreme Court (making opinion final).

STEERE & STEERE and EDWIN WHITE MOORE, for appellants.

WILLIAM S. ELLIOTT, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the administrators of Henry F. Benton and the executor of the will of Susan D. Benton from a decree in a suit begun by the filing by appellee of a bill of interpleader February 19, 1903. George C. Benton in June, 1902, a short time before his death, transferred to his brother Henry F., 950 shares, to Alfonso L., a brother, 50 shares, and to Charles W. Ward as trustee for his daughter, the granddaughter of George C. Benton, 1000 shares of the capital stock of the Delta and Pine Land Company. The persons to whom the stock was so transferred each question the validity of the transfers other than the one to himself, the widow of George C. Benton questioned the validity of all of the transfers, and each gave notice to the corporation not to pay dividends

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

to any of the other parties.   The corporation then filed the bill of interpleader making the persons to whom stock had been transferred, the executor and the widow of George C. Benton, defendants.   The complainant in the bill was a Mississippi corporation, the owner of lands in that State which it was selling for part cash and part interest bearing notes and distributing the money and notes received for land sold among its stockholders as dividends.   The bill alleged that December 31, 1902, the directors declared a dividend of $32 per share, $10 in cash and $22 in mortgage notes of third parties; that complainant was willing to pay the dividends on said shares of stock to the persons lawfully entitled to receive the same, and offered to bring the same into court, as the court might direct.   The differences between the defendants were all compromised and adjusted.   Alfonso L. Benton filed a disclaimer.

This appeal presents for our consideration three questions:

First.   Should complainant be compelled to pay interest on funds in its hands during the litigation?

Second.   Did the court properly order that the costs of the reference, exclusive of the costs made in the petition of Shedd for compensation, be paid, one-fourth by the executor of Susan D. Benton and three-fourths by the administrators of Henry F. Benton, they being the unsuccessful contestants in said matter, and the proportions of one-fourth and three-fourths being the respective proportions of their interests in the fund involved in the accounting?

Third.   Did the court err in allowing $1,250 to the complainant for its solicitor's fees?

June 29, 1903, on motion of the defendants other than Henry F. Benton, and against his objection, it was ordered that "the complainant deposit the money and notes alleged in the bill of complaint herein in the Federal Trust and Savings Bank, to be held by said bank subject to the order of the Court."   Sep-

tember 22, 1904, an order was entered in the cause reciting that an additional dividend amounting to $21,569.19 had been declared by complainant since the order of June 29, 1903, was made; that the parties to the suit desired that the money be deposited in a responsible bank that was willing to pay interest thereon until the termination of the suit, and ordering by agreement of parties that complainant deposit with said Federal Trust and Savings Bank all cash dividends on the stock in controversy then in the hands of complainant. A similar order was made March 5, 1905, as to an additional dividend of $4,938.20. July 7, 1905, a decree was entered reciting that the Federal Trust and Savings Bank was then the American Trust and Savings Bank, and that it appeared to the court that the complainant had from time to time deposited in said bank the dividends declared, "subject to the further order of the court," and it was ordered that complainant deposit in said American Trust and Savings Bank all future dividends on said shares of stock. The complainant deposited in the banks mentioned in the orders all the cash dividends declared by it, and was paid and accounted for interest thereon at the rate of three per cent. The money collected on notes it deposited in the bank and took for each deposit a certificate of deposit, on which it was also paid and accounted for interest at three per cent. The orders were not carefully drawn, the money was to be deposited in the bank subject to the order of the court, but in whose name was not stated. The treasurer of complainant told the officers of the bank that the money was deposited subject to the order of the court and gave the bank a copy of the orders. Complainant had no other account with either of said banks, and the money was kept separate from the funds of complainant. No part of the money deposited was withdrawn until the court ordered it withdrawn after the controversy between the defendants had been adjusted.

We think the court properly refused to compel complainant to pay interest on the funds so deposited, on which the banks allowed and the parties in interest received interest at the rate of three per cent.

We also think that the order as to the costs of the accounting before the master was proper.

In *Chapin v. Dake*, 57 Ill. 295, the Fifth National Bank of Chicago drew and delivered to the payee two drafts on a New York bank for $1,000 each, payable to the order of Dake. Dake indorsed and delivered the drafts to Donaldson, who delivered the same to Chapin and Gore. Dake filed a bill against Donaldson, Chapin and Gore and the Fifth National Bank to have the indorsements cancelled and the drafts delivered to him on the alleged grounds that the drafts were lost by him by gaming and subsequently came into the hands of Chapin and Gore as indorsers. The bank filed a cross-bill of interpleader. The court on the final hearing decreed that the bank pay into court for the use of Dake the sum of $2,000, less $100 for solicitor's fees, and that on making such payment it should be released from all liability on the drafts. From this decree an appeal was taken to the Supreme Court. In the opinion in that court it was said: "On the cross-bill of the Fifth National Bank, it should not have been allowed $100 solicitor's fees, but only its costs. It should have paid an additional $100 into court." The rule that an interpleader cannot be allowed solicitor's fees is clearly stated in the case cited, and the rule so stated has not been modified by any subsequent decision of the Supreme Court. The rule in this State is that the court cannot allow a solicitor's fee in the absence of a statute authorizing it to do so. This was the rule in partition cases before the statute of 1869. *Adams v. Payson*, 11 Ill. 26; *Eimer v. Eimer*, 47 Ill. 373; *Campbell v. Campbell*, 63 Ill. 502. See also *Constant v. Matteson*, 22 Ill. 546; *Wilson v. Clayburgh*, 215 Ill. 506; *Modern Woodmen of America v. Conner*, 129 Ill. App. 652.

The practice of allowing to an interpleader solicitor's fees has been common in the courts of this county, but on the authority of *Chapin v. Dake, supra,* we hold that there is no authority for making such allowance.

There were three allowances of solicitor's fees to the interpleader in this case. The first, of $500, was made in the decree entered July 7, 1905. This was a final decree declaring the right as between complainant and the defendants, directing complainant to file a statement of dividends declared and deposits made, and to deposit in the American Trust and Savings Bank all future dividends, and directing that the defendants interplead and adjust their several claims as between themselves. The decree directed that complainant's costs, including a solicitor's fee of $500, be paid to complainant out of the fund in its possession. From this decree, Henry F. Benton appealed to this court and his appeal was dismissed for failure to file a transcript of the record. *Benton v. Delta & Pine Land Co.,* 129 Ill. App. 341. We think that the appellants cannot on this appeal question the allowance of solicitor's fees made in the decree of July 7, 1905.

The allowance of $250 for solicitor's fees to complainant was made in the decree entered November 11, 1907. On the same day this order was entered:

"Upon agreement of all parties, it is ordered that the American Trust & Savings Bank be authorized and empowered to pay to the Delta & Pine Land Co. the sum of $250 as allowed by the decree entered herein on November 11, 1907."

The order having been made by consent of appellants, they cannot be heard to question its propriety.

The decree appealed from entered October 21, 1912, makes a further allowance to complainant of $500 for solicitor's fees. This allowance, as has been said, we regard as unauthorized and improper.

The court, in accordance with the stipulation of the parties, found and decreed by the decree of November

4, 1907, that of the remainder of the dividends declared on the stock and deposited in accordance with the orders of the court, Henry F. Benton was entitled to three-fourths and Clarence A. Tuttle, as executor of Susan D. Benton, to one-fourth; that the undistributed funds were in the Continental and Commercial Savings Bank, the successor to the American Trust and Savings Bank.

The decree appealed from will be modified by striking out therefrom the order that the sum of $500 be allowed and paid to complainant, and adding an order that the said Continental and Commercial Savings Bank pay three-fourths of said $500, with interest at three per cent. per annum from the date of the decree, to Silas W. Sherwood and Arthur S. Stillson as administrators of the estate of Henry F. Benton, deceased, and the remaining one-fourth thereof, with interest at three per cent. per annum from the date of the decree, to Clarence A. Tuttle, executor of Susan D. Benton, deceased, and as so modified the decree will be affirmed. Each party to this appeal will pay the costs made by such party on the appeal.

*Decree modified and as modified affirmed. Each party to pay the costs made by such party on the appeal.*